UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| CARL J. DRUCKER, II, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 2:12-cv-00150-JMS-WGH ) |
| MICHAEL T. ROGAN, M.D., KIM GRAY, | ) ) ) |
| Defendants. | ) |

**Entry Granting Defendants' Motion for Summary Judgment, Vacating Status Conference, and Directing Entry of Final Judgment**

For the reasons explained in this Entry, the defendants' motion for summary judgment [dkt. 93] is **granted** and the plaintiff's motion to oppose summary judgment [dkt. 105] is **denied.**

## I. Background

The plaintiff in this 42 U.S.C. § 1983 civil rights action is Carl J. Drucker, II ("Mr. Drucker"), an inmate who at all relevant times has been in custody at the Wabash Valley Correctional Facility ("Wabash Valley"). The defendants are Dr. Michael T. Rogan and nurse Kim Gray.

Mr. Drucker alleges in his amended complaint that the defendants were deliberately indifferent to his serious medical needs over a period of two to three weeks in violation of the Eighth Amendment to the United States Constitution. Specifically, he alleges he was denied a wheelchair, was not seen by a physician, and was not given pain medication. He seeks compensatory and punitive damages.

The defendants seek resolution of Mr. Drucker's claims through the entry of summary judgment. Mr. Drucker has opposed the motion for summary judgment and the defendants have replied.

## II.  Summary Judgment Standard

Summary judgment is appropriate when the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). To survive a motion for summary judgment, the non-moving party must set forth specific, admissible evidence showing that there is a material issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 2008). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011).

A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). If no reasonable jury could find for the non-moving party, then there is no "genuine" dispute. *Scott v. Harris,* 550 U.S. 372, 380 (2007).

## III.  Discussion

### A.  Undisputed Facts

On the basis of the pleadings and the portions of the expanded record that comply with the requirements of Rule 56(c)(1), construed in a manner most favorable to Mr. Drucker as the non-

moving party, the following facts are undisputed for purposes of the motion for summary judgment:

In December of 2009, Mr. Drucker injured his ankles and knees, bilaterally, when he fell from a second story building. He entered the Indiana Department of Correction ("IDOC") in May of 2010. On May 4, 2010, Mr. Drucker was first seen by a Nurse Practitioner at the IDOC Reception Diagnostic Center ("RDC") facility. The nurse observed that Mr. Drucker had a history of "mild to moderate asthma" and a painful right ankle "since 1990 (sic) related to a fall from a height." Mr. Drucker reported that his chronic problems included pain in his limbs, a thumb amputation, late effects of a motor vehicle accident, asthma, a fracture of an unspecified part of his tibia and fibula, and cervicalgia (neck pain). The nurse observed surgical scars on Mr. Drucker's left leg and right knee. Mr. Drucker was assessed with chronic pain involving his ankle and foot. He was prescribed asthma medication. Orders for a bottom bunk, a cane for ambulation, and "no stairs" were issued, and he was enrolled in the Chronic Care Clinic ("CCC") for pain management. He was also scheduled for the General Medicine CCC and the Pulmonary CCC.

On May 10, 2010, Mr. Drucker saw nursing staff at the RDC and reported bilateral pain in his ankles and knees since his December 1, 2009, fall from a second story building. He complained of tingling, burning sensations, numbness, muscle spasms, weakness, and loss of balance. The nurse observed his range of motion was not within normal limits, but there was no discoloration at that time. The nurse contacted a physician for same day treatment and orders. Mr. Drucker was provided an elastic bandage/splint to immobilize the injury and was instructed to apply cool compresses and to contact sick call if his symptoms did not subside or became more severe. Mr. Drucker's Initial Psychiatric Evaluation indicates he was treated for post traumatic stress disorder and polysubstance abuse.

Mr. Drucker was transferred to Wabash Valley Correctional Facility ("Wabash Valley") around May 11, 2010. Defendants Michael Rogan, M.D. and Alfred Talens, M.D. were the medical service providers at Wabash Valley. On May 13, 2010, a Mental Health Provider who saw Mr. Drucker for intake placement at Wabash Valley observed that Mr. Drucker was walking with a cane and that he talked about an upcoming surgery that he was to have to correct his ankles.

On May 14, 2010, Mr. Drucker was seen by Dr. Talens in the CCC. Mr. Drucker was seen for asthma and pain. Mr. Drucker reported pain in his neck, back, bones and joints due to multiple injuries. Dr. Talens noted Mr. Drucker had no edema or cyanosis in his extremities. His extremities showed deformities secondary to old injuries.

On May 21, 2010, a nurse created a late nurse visit note entry concerning May 19, 2010, when Mr. Drucker reported bilateral pain in his legs/heels. She noted that Mr. Drucker stated that he had pins removed from his right leg in February 2010, that he did not think his leg was healing correctly, and that Mobic was not helping with pain. The nurse referred Mr. Drucker to be seen at the medical sick call.

On June 3, 2010, Dr. Rogan ordered a medical lay-in for seven (7) days, until June 10, 2010. That lay-in pass allowed Mr. Drucker to receive meals in his cell. Mr. Drucker was given Vicodin from June 5, 2010, through June 11, 2010.

As reflected in the documents submitted with Mr. Drucker's amended complaint, he submitted a request for health care on June 9, 2010, on which he placed nurse Kim Gray's name, requesting a wheelchair. The request was received on June 10, 2010. The response was not signed by anyone but it was stamped with an instruction for Mr. Drucker to sign up for nursing sick call and bring the request form.

On June 13, 2010, Mr. Drucker complained that while walking he lost his balance (he was using a cane), fell, and thought he heard a popping sound. At sick call, the nurse noted that Mr. Drucker previously had right ankle surgery and that Mr. Drucker stated he believed the surgery did not correct his ankle. The nurse observed Mr. Drucker had tenderness, pulses, pain with movement, sensation intact, no spasm, weakness, no discoloration, no tingling, no numbness, and no swelling, and his range of motion was not within normal limits. She further noted that Mr. Drucker had been having problems with his bilateral extremities for some time.

The nurse contacted Dr. Talens and was given new orders for Mr. Drucker to apply ice, compression, and immobilization with an elastic bandage/splint. The nurse referred Mr. Drucker to a physician for follow-up. Dr. Talens also ordered activity restrictions for 3 days, a wheelchair and non-bearing instructions, Vicodin for 3 days, and instructed Mr. Drucker to contact sick call if symptoms did not subside or became more severe. Mr. Drucker was given Vicodin June 14, 2010, through June 18, 2010. Pain medication including Tylenol and Motrin were also available for purchase through commissary.

The next day, on June 14, 2010, a "provider visit" was scheduled pursuant to the referral by nursing staff the day before. The records indicate that Dr. Rogan reviewed the June 13, 2010, nursing note and the orders by Dr. Talens and then planned to "provide pain control and request Ortho f/u" with an Orthopedic Surgeon consultation. Dr. Rogan did not see Mr. Drucker on June 14, 2010. Mr. Drucker returned to sick call on June 17, 2010, and was told that the physician had been sick that week and so his appointment was rescheduled.

On July 2, 2010, Dr. Rogan completed a late chart entry, clearly designated as such, concerning his June 14, 2010, review of the chart. Dr. Rogan noted that Mr. Drucker had multiple lower extremity fractures from various events, most recently closed left and open right calcaneus

(heel bone) fracture after a jump from a second floor of a house prior to incarceration in December, 2009. Dr. Rogan noted that Mr. Drucker also had a right tibia/fibula fracture in 1989 and open reduction internal fixation for treatment. Dr. Rogan further noted that in March 2010, Mr. Drucker was seen for a post-operative visit at Wishard Memorial Hospital due to complaints of persistent pain in his right calcaneus. Dr. Rogan was aware that Mr. Drucker informed staff that he was advised at Wishard Hospital that a fusion might be necessary and possible hardware revision due to the point of the right tibial screw being palpable in the superficial subcutaneous skin medially. Dr. Rogan was aware that Mr. Drucker stated he was told at Wishard Hospital to follow-up in 3 months. Dr. Rogan noted that Mr. Drucker was wheel-chair dependent due to pain with weight-bearing. As indicated above, Dr. Rogan's plan was to provide pain control and request orthopedic follow-up.

Mr. Drucker submitted health care request forms on June 22, 2010, and June 24, 2010, complaining about pain in his right ankle and knee. He was scheduled to be seen by a physician. On June 25, 2010, Mr. Drucker was seen in sick call. The nurse noted that Mr. Drucker reported pain in his right foot from "twisting" his "ankle." She observed tenderness, pulses, pain with movement, sensation intact, no spasms, weakness, discoloration, no tingling, no numbness, swelling, and a range of motion that was not within normal limits. The nurse consulted with Dr. Rogan and he ordered Mr. Drucker to be sent for an x-ray. An x-ray was taken that day. Dr. Rogan also ordered pain medication, a referral to orthopedic surgery, ice, and compression. Mr. Drucker received Vicodin from June 30, 2010, through July 30, 2010.

The x-ray report indicated that the reason for the x-ray was right ankle pain, previous injury, ankle gave out, and right knee pain/screws sticking out. The impression was Mr. Drucker

had a fracture of the calcaneus (heel bone) with some deformity, but there was no acute injury involving the ankle.

On July 20, 2010, Mr. Drucker was seen at Wishard Hospital by Dr. Ryan R. Jaggers, for the orthopedic consultation requested by Dr. Rogan. X-rays of the knee, calcaneus, and ankle were taken and compared with March 16, 2010, x-rays in the hospital records. The March 2010 x-rays showed calcaneus fractures three months earlier and interval healing of those fractures. The July 2010 x-ray of Mr. Drucker's right ankle noted no "acute" or "new" fractures. The x-ray of the calcaneus revealed a flattening of the calcaneus and no new fractures. Dr. Jaggers recommended Mr. Drucker receive a subtalar fusion concerning his foot problem, and hardware removal from his knee.

On July 30, 2010, Dr. Rogan reviewed and initialed Dr. Jagger's recommendations. Surgery was performed on August 9, 2010. Post-operatively, Mr. Drucker was reported to be doing well and he tolerated the procedure well. Mr. Drucker was discharged back to prison in stable condition. Dr. Rogan had no further involvement in Mr. Drucker's immediate post-surgery medical care.

Dr. Bonema, a practicing medical doctor licensed in the State of Michigan, reviewed the amended complaint and Mr. Drucker's medical records (listed on pg. 1 of dkt. 96-5). It is Dr. Bonema's opinion that Dr. Rogan provided Mr. Drucker with care that exceeded the applicable medical standard of practice and care. Dr. Bonema opined that each time Dr. Rogan was involved with Mr. Drucker's care, he appropriately assessed his medical needs and provided appropriate pain relief and a timely and appropriate referral for an x-ray, an orthopedic consultation, and surgery. Dr. Bonema opined that the x-ray showed that Mr. Drucker did not re-fracture his ankle or foot from a fall at the prison in June of 2010, as alleged in the amended complaint. Dr. Bonema

further stated that the subtalar fusion and hardware removal from Mr. Drucker's knee were completed in a timely and appropriate manner within approximately two months of his presentation at Wabash Valley and within approximately one month after Dr. Rogan's first involvement with Mr. Drucker's medical care.

**B. Analysis**

At all times relevant to Mr. Drucker's claims, he was a convicted offender. Accordingly, his treatment and the conditions of his confinement are evaluated under standards established by the Eighth Amendment's proscription against the imposition of cruel and unusual punishment. *Helling v. McKinney*, 509 U.S. 25, 31 (1993) ("It is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment.").

Pursuant to the Eighth Amendment, prison officials have a duty to provide humane conditions of confinement, meaning, they must take reasonable measures to guarantee the safety of the inmates and ensure that they receive adequate food, clothing, shelter, and medical care. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To prevail on an Eighth Amendment claim, a plaintiff must demonstrate two elements: (1) an objectively serious medical condition, and (2) deliberate indifference by the prison official to that condition. *Pittman ex rel. Hamilton v. County of Madison, Ill.*, 746 F.3d 766, 775 (7th Cir. 2014).

As to the first element, "[a]n objectively serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *King v. Kramer,* 680 F.3d 1013, 1018 (7th Cir. 2012) (internal quotation omitted). In their reply, the defendants argue that Mr. Drucker's right ankle/foot injury does not constitute a serious medical need. The Court finds this

position untenable. Mr. Drucker's ankle injury and pain shall be treated as a serious medical need for purposes of this motion for summary judgment.

As to the second element, "[t]o show deliberate indifference, [Mr. Drucker] must demonstrate that the defendant was actually aware of a serious medical need but then was deliberately indifferent to it." *Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009). "A medical professional's deliberate indifference may be inferred when the medical professional's decision is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible did not base the decision on such a judgment." *King,* 680 F.3d at 1018-1019 (internal quotation omitted). The Eighth Amendment "can only be violated through deliberate action or inaction-mere negligence is not 'punishment.'" *Olson v. Morgan,* 750 F.3d 708, 713 (7th Cir. 2014). "Even gross negligence is insufficient to impose constitutional liability." *McGee*, 721 F.3d at 481. Deliberate indifference is "essentially a criminal recklessness standard, that is, ignoring a known risk." *Id.* (internal quotation omitted).

*Denial of Wheelchair*

Mr. Drucker alleges in his amended complaint that he saw Dr. Rogan on June 3, 2010, and asked him for a wheelchair because walking to meals and religious services was painful.[1] He alleges that Dr. Rogan told him he did not need a wheelchair because Dr. Rogan provided him with a medical lay-in pass for seven days and Vicodin for pain. While on lay-in status, meals were brought to Mr. Drucker's cell.

Dr. Rogan denies that Mr. Drucker requested a wheelchair on June 3, but this disputed fact is not material because even accepting Mr. Drucker's allegations as true, no reasonable jury could

---

[1] Mr. Drucker's amended complaint is signed with an affirmation that he believed all statements contained therein to be true and correct to the best of his personal knowledge and belief, but he has not declared or affirmed any statements under the penalty of perjury.

find that the circumstances rose to the level of deliberate indifference. Dr. Rogan responded to Mr. Drucker's complaint of having pain when he walked by providing the lay-in pass and strong medication. "An inmate is not entitled to demand specific care and is not entitled to the best care possible …." *Arnett v. Webster,* 658 F.3d 742, 753 (7th Cir. 2011). An inmate "is entitled to reasonable measures to meet a substantial risk of serious harm." *Id.* This is what Mr. Drucker received on June 3, 2010. Dr. Rogan was not deliberately indifferent to Mr. Drucker's request for a wheelchair.

As to Mr. Drucker's claim against nurse Gray, there is no admissible evidence that Ms. Gray ever denied any request for a wheelchair. The health care request for a wheelchair that Mr. Drucker sent on June 9, 2010, was received the next day. The response was not signed by anyone but it was stamped with an instruction for Mr. Drucker to sign up for nursing sick call and bring the request form. There is no evidence that nurse Gray was personally aware of the request. Moreover, no one denied the request. A wheelchair was provided on June 13, 2010.

The fact that on June 13, 2010, before Mr. Drucker received the wheelchair, he slipped and fell on his right side, does not make nurse Gray deliberately indifferent. The provision of the wheelchair was reasonable and timely. There is no evidence that nurse Gray was deliberately indifferent to any request for a wheelchair in the month of June 2010.

Mr. Drucker further argues that nurse Gray was in charge of the medical department and therefore was liable for not making sure he saw a physician in a more timely manner. There is no evidence that Nurse Gray had any direct involvement in Mr. Drucker's care. The fact that she may have had a supervisory position does not make her responsible for any alleged misconduct on the part of any other employees. Section 1983 liability requires a defendant's personal involvement in the alleged constitutional violation. *Munson v. Gaetz*, 673 F.3d 630, 637 (7th Cir. 2012); *Burks v.*

*Raemisch,* 555 F.3d 592, 593-94 (7th Cir. 2009) ("Section 1983 does not establish a system of vicarious responsibility. Liability depends on each defendant's knowledge and actions, not on the knowledge or actions of persons they supervise.") (internal citation omitted). "It is well established that there is no *respondeat superior* liability under § 1983." *Gayton v. McCoy,* 593 F.3d 610, 622 (7th Cir. 2010). Mr. Drucker's theory of liability against nurse Gray fails.

Both defendants are entitled to summary judgment with respect to Mr. Drucker's claim of deliberate indifference based on the failure to provide a wheelchair for a four day period.

*Health Care Between June 13, 2010 and July 2, 2010*

Mr. Drucker further alleges that he was denied medical care and not seen by a doctor for twelve (12) painful days from June 13 until June 25, 2010. The record does not support his allegations. Even if Mr. Drucker was not seen by a physician during that period of time, he was not denied medical care or doctors' orders.

"[T]he Eighth Amendment does not require that prisoners receive unqualified access to health care." *Johnson v. Doughty,* 433 F.3d 1001, 1013 (7th Cir. 2006) (internal quotation omitted). Prisoners "are entitled to only adequate medical care." *Id.* (internal quotation omitted). It is clear that Mr. Drucker was dissatisfied with the treatment he received in June of 2010 at Wabash Valley, however, that does not prove his claim. *See Ciarpaglini v. Saini,* 352 F.3d 328, 331 (7th Cir. 2003) (mere disagreement with medical professionals about one's needs does not state a claim for deliberate indifference).

On June 13, 2010, nursing staff contacted Dr. Talens who ordered Vicodin and restricted activity for three days, ice, compression, a wheelchair, non-bearing instructions, and immobilization with elastic bandage/splint. On June 14, 2010, Dr. Rogan reviewed the June 13 notes and planned to provide pain control and request an orthopedic surgeon consultation. Mr.

Drucker submitted medical requests on June 17, 22, 24, and 25, 2010, complaining about pain in his right ankle/feet and knees. Medical staff responded to the requests submitted on June 17, 22, and 25, by scheduling Mr. Drucker to see a doctor, but the initial appointment had to be rescheduled. Dr. Rogan issued further treatment orders on June 25, 2010.

Mr. Drucker was provided Vicodin from June 5, through June 11, 2010, from June 14, through June 18, 2010, and from June 30, 2010, through the end of July 2010. There was a gap of about twelve (12) days when it appears that Mr. Drucker's Vicodin prescription ran out before it was refilled. There is no evidence that this gap was the result of any deliberate indifference on the part of either defendant.

Over-the-counter pain medications were also available through commissary. Mr. Drucker contends that he could not afford commissary and that commissary was not available because any order takes two weeks to be filled, but he has presented no evidence to support these allegations. Further, even if Mr. Drucker did not have access to over-the-counter medications, there is no evidence to suggest that the defendants were aware of this situation.

*Totality of Care*

A court examines the totality of an inmate's medical care when determining whether defendants have been deliberately indifferent to an inmate's serious medical needs. *Walker v. Peters,* 233 F.3d 494, 501 (7th Cir. 2000). The totality of medical care provided to Mr. Drucker for his ankle/foot pain was reasonable and appropriate, and no reasonable jury could infer that Dr. Rogan or nurse Gray acted with deliberate indifference in treating Mr. Drucker. In evaluating a deliberate indifference claim, a "physician's treatment decisions are entitled to deference unless no minimally competent professional would have done the same." *Luckett v. Heidorn,* 566 Fed.Appx. 516, 519 (7th Cir. June 19, 2014). The medical expert opinion of Dr. Bonema is that

Dr. Rogan provided care that exceeded the applicable medical standard of practice and care. Even if Mr. Drucker had shown negligence on the part of Dr. Rogan, which he has not done, that would not be sufficient to survive summary judgment as to his claim of deliberate indifference. There is no evidence that Dr. Rogan's actions fell below the applicable standard of care.

As noted, on June 13, 2010, Dr. Talens prescribed immobilization, ice, compression, Vicodin, and a wheelchair for Mr. Drucker's ankle/foot pain. On June 25, 2014, Dr. Rogan ordered more pain medication, an x-ray, ice, compression, and provided a referral to an orthopedic surgeon. The x-rays showed a fracture of the calcaneus (heel bone) with some deformity but no acute injury involving the ankle. Mr. Drucker was seen by an orthopedic surgeon on July 20, 2010. Contrary to Mr. Drucker's allegations, no x-ray showed that Mr. Drucker re-fractured his ankle or foot when he fell at the prison on June 13, 2010. The July 20, 2010, x-ray revealed "no acute fracture" and no change from March 16, 2010, x-rays which had been taken at Wishard Hospital. When Mr. Drucker arrived at Wabash Valley, he had reported to staff that he might need a fusion and hardware revision surgery at Wishard Hospital. This right subtalar fusion surgery was, in fact, performed on August 9, 2010.

A surgical consultation was provided within a couple of months of when Dr. Rogan first was involved with Mr. Drucker's care. The Wabash Valley medical staff, including the defendants, responded in a reasonable manner to Mr. Drucker's complaints. There is no evidence that Dr. Rogan or nurse Gray were aware of a serious medical need or pain that they ignored or failed to address. Mr. Drucker alleges, in fact, that around June 17, 2010, when he was scheduled to see a physician, Dr. Rogan was ill and his appointment had to be rescheduled. These circumstances do not constitute deliberate indifference.

"In cases where prison officials delayed rather than denied medical assistance to an inmate, courts have required the plaintiff to offer 'verifying medical evidence' that the delay (rather than the inmate's underlying condition) caused some degree of harm. That is, a plaintiff must offer medical evidence that tends to confirm or corroborate a claim that the delay was detrimental." *Jackson v. Pollion,* 733 F.3d 786, 790 (7th Cir. 2013) (internal quotation omitted). *see also Langston v. Peters,* 100 F.3d 1235, 1240 (7th Cir. 1996) ("An inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed."). Aside from a twelve (12) day lapse in Vicodin, the record reflects that no measureable delay in treatment occurred. There is no evidence that Dr. Rogan refused to renew the prescription or otherwise knew that Mr. Drucker was without pain medication. As noted above, pain medications were also available through commissary. Moreover, Mr. Drucker has presented no evidence of a detrimental effect of any alleged delay in treatment.

Under these circumstances, no reasonable jury could find that either Dr. Rogan or nurse Gray acted with deliberate indifference to Mr. Drucker's ankle/foot pain. The defendants are entitled to summary judgment as to the Eighth Amendment claims of deliberate indifference asserted against them.

## IV.  Conclusion

Mr. Drucker has not identified a genuine issue of material fact as to his claims that the defendants were deliberately indifferent to his serious medical needs. Therefore, the defendants' motion for summary judgment [dkt. 93] must be **granted** and Mr. Drucker's motion to oppose summary judgment [dkt. 105] is **denied.** Judgment consistent with this Entry shall now issue.

The status conference set for December 17, 2014, is **vacated.**

**IT IS SO ORDERED.**

Date: November 26, 2014

_____
Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

CARL J. DRUCKER, II, 980552
Wabash Valley Correctional Facility
Electronic Service Participant – Court Only

All electronically registered counsel

Magistrate Judge William G. Hussmann, Jr.